UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA LAURA HERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>        Defendant. | Case No. 1:22-cv-00188-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 19, 20) |

Cynthia Laura Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance and supplemental security income benefits under the Social Security Act. (Doc. 1). Plaintiff alleges disability beginning August 15, 2016. (Administrative Record ("AR") at 19). The matter currently is before the Court on the certified administrative record (Doc. 14) and the parties' briefs, which were submitted without oral argument. (Docs. 19- 21).[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He therefore is substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings

# I.     LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061,

---

in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 13).

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

2

1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a

scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## II. LEGAL ISSUES

Plaintiff presents the following issues for review:

1. The RFC finding is incomplete because it fails to address Plaintiff's need for a cane, and the ALJ failed to set forth clear and convincing reasons for discounting Plaintiff's use of a cane.

2. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.

(Doc. 19 at 7-12). Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## III. DISCUSSION

### A. RFC Determination

Plaintiff first argues that ALJ Dianna Erickson failed to properly formulate Plaintiff's RFC to account for her need for a cane. *Id*. at 7-8. A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see* 20 C.F.R. Part

4

404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In determining a claimant's RFC, an ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

Here, the ALJ formulated the following RFC:

> "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently climb ramps and stairs, stoop, balance, kneel, crouch, and crawl. The claimant can occasionally reach overhead bilaterally. The claimant should not have exposure to vibration or hazards."

(AR at 19). The ALJ acknowledged Plaintiff "was often noted to be using a cane or walker. (e.g., Exh. 6F/10). However, examinations also generally indicated her gait was normal. (e.g., Exh. 6F/98; 8F/111; 2F/1; 5F/2)." *Id*. at 20.

Plaintiff argues the ALJ failed "to base the RFC on all relevant medical and other evidence, which established that Plaintiff often needed to use a cane for ambulation." (Doc. 19 at 8). Specifically, Plaintiff asserts she needed a cane for about 10 days per month due to pain, and she was regularly observed to require a cane for ambulation. *Id*. (citing AR at 46, 353, 359, 364, 374, 379, 384, 390). Plaintiff contends the ALJ failed to explain why Plaintiff's need for a cane 10 days per month was discounted. *Id*.

In response, Defendant asserts the ALJ considered Plaintiff's alleged need for a cane but reasoned that examinations generally indicating that Plaintiff's gait was normal undermined the alleged severity of her walking and standing limitations and her frequent need for a cane. (Doc. 20 at 7). Defendant also contends Plaintiff does not explain how the use of a cane would preclude

her from performing a reduced range of light work, including her past relevant work as a laundry sorter. *Id*. Defendant concludes Plaintiff has failed to meaningfully challenge the ALJ's RFC finding regarding her need for a cane and has not shown harmful error. *Id*. at 7-8.

The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *Quintero v. Colvin*, No. 1:13-cv-00478-SKO, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held assistive device' is probative of a claimant's functional limitations only if it is medically required."). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

The Court disagrees with Plaintiff that there is medical evidence in the record to establish her need for a cane to help her ambulate. Plaintiff testified "to needing a cane for about 10 days per month due to pain, and she was regularly observed to require a cane for ambulation." (Doc. 19 at 8) (citing AR at 46, 353, 359, 364, 369, 374, 379, 384, 390). However, Plaintiff's proffered records only note she was able to "ambulate with a cane" (AR at 353, 359, 364, 369, 374, 379, 384, 390), and does not reflect any medical determination that the cane was required. This evidence does not establish Plaintiff's use of a cane was "medically required" under SSR 96-9p. *See Sou v. Saul*, 799 F. App'x 563, 564-65 (9th Cir. 2020) (holding that the plaintiff failed to demonstrate that a cane was medically required where the evidence "did not describe the circumstances for which a cane was needed"); *see also Downyell v. Kijakazi*, No. 2:20-cv-07312-SP, 2022 WL 971335, at *3 (C.D. Cal. Mar. 31, 2022) (holding that a medical professional's opinion that the plaintiff "has to use a cane for ambulation" was insufficient because it did not indicate duration, distance, terrain, or any other relevant information, and therefore did not satisfy SSR 96-9p); *Dean N. v. Saul*, No. CV 18-09840-DFM, 2020 WL 430962, at *2 (C.D. Cal. Jan. 28, 2020) ("Plaintiff was required to establish both need and the specific circumstance in which he needs the cane before the ALJ could include the usage of a cane in his RFC"); *Flores v.*

*Colvin*, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (holding that references to the plaintiff's cane use were traceable to his self-reports and his medical source's observations were insufficient to demonstrate medical necessity); *Cashin v. Astrue*, No. EDCV 09-161 JC, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (holding that a doctor's observation of the plaintiff's use of a cane during an examination did "not constitute an objective finding that plaintiff's cane was medically required"); *cf. Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *2-4 (D. Or. Oct. 23, 2023) (including a cane limitation in the RFC where a medical opinion stated that "Plaintiff must use a cane when engaged in occasional standing and walking").

Accordingly, the ALJ did not err because the evidence (AR at 46, 353, 359, 364, 369, 374, 379, 384, 390) did not establish that Plaintiff's cane was medically required.

**B.     Plaintiff's Subjective Complaints**

Next, Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting her subjective complaints and failed to include work-related limitations in the RFC consistent with the nature and intensity of her limitations. (Doc. 19 at 7, 9-12).

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that this impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

1  undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.
2  1995)); *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with
3  findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
4  discredit claimant's testimony.").

5  However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the
6  ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th
7  489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by
8  substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.
9  1995); *see Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our
10 next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony
11 is supported by substantial evidence under the clear-and-convincing standard.").

12 Here, the ALJ acknowledged Plaintiff's "medically determinable impairments could
13 reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements
14 concerning the intensity, persistence, and limiting effects of these symptoms are not entirely
15 consistent with the medical evidence and other evidence in the record." AR at 19. Thereafter, the
16 ALJ provided an overview of the medical records, noting that some records supported Plaintiff's
17 severe impairments. *Id*. However, the ALJ observed Plaintiff's "[e]xamination findings were
18 generally fairly normal. [Plaintiff] often appeared as alert, oriented, and in no acute distress." *Id*.
19 at 20. The ALJ acknowledged Plaintiff's reports of pain but noted "with distraction, there was
20 relief of pain." *Id*. The ALJ also noted Plaintiff's musculoskeletal and neurological examinations
21 were normal. *Id*.

22 The ALJ reported Plaintiff's psoriasis was treated with topical steroids and over-the-
23 counter medication and generally improved with use of medication. *Id*. The ALJ noted Plaintiff
24 "has been treated relatively conservatively." *Id*. Specifically, the ALJ reported Plaintiff:

> "testified surgery was recommended but she chose not to do it because there was a 50%
> likelihood that it would not improve her symptoms. She used a heating pad during the day
> to help with her pain. She stated she canceled her arthritis medications because they did
> not work. (Hearing Testimony). The record reflected a suggestion for surgery on her back
> but she "didn't want it." (Exh. 6F/78). Pain medication, such as Norco as needed and

> Lidoderm patches, helped control her pain, increased her functional mobility, and enabled her to maintain her activities of daily living independently. (e.g., Exh. 6F/78, 93; 11F/5). She tried steroidal injections, physical therapy, and chiropractor services in the past but stated they did not help. (Exh. 6F/78; 3F)."

*Id*. Next, the ALJ observed that, despite Plaintiff's impairments, she was able to perform a variety of activities. The ALJ noted Plaintiff's work at Yellowstone National Park ended because of the season change and not due to her alleged disability. *Id*. The ALJ also noted Plaintiff had no problems using the phone or engaging in social activities and could read, watch television, go to the store, clean up around the house with breaks, do her own shopping, wash dishes, and drive a car. *Id*. at 20-21. The ALJ concluded, "by limiting [Plaintiff] to a range of light work, the undersigned has adequately considered her subjective complaints and the objective medical evidence." *Id*. at 21.

Plaintiff argues the ALJ erred in discounting her pain on the grounds that she appeared in no acute distress. (Doc. 19 at 10). Plaintiff contends her impairments are chronic and lack of acute distress is not a basis for discounting her chronic pain. *Id*. (citing *Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21, 2020)). An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, some district courts have questioned the applicability of the generic chart note of "no acute distress" to chronic conditions. *Toni D*, 2020 WL 1923161, at *6 (citing, *Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020)) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.").

These courts rejected an ALJ's reliance on cherry-picked statements in the claimant's

1  medical record of acute distress while ignoring statements in those same notes describing chronic
2  pain. *See Toni D*, 2020 WL 1923161, at *6 ("the *generic chart note* of 'no acute distress' is not a
3  clear and convincing reason to discount Plaintiff's symptom testimony") (emphasis added); *see*
4  *also Barbara P. v. Kijakazi*, No. 2:20-cv-00326-MKD, 2021 WL 4295745, at *7 (E.D. Wash.
5  Sep. 21, 2021) ("In repeatedly citing a brief, generic chart note as one of the few reasons to reject
6  Ms. Witte's opinions, the ALJ mischaracterized the record.  The longitudinal treatment record
7  shows more mixed results, and by not analyzing relevant findings within the same treatment
8  notes, the ALJ's characterization of the record is not supported by substantial evidence."); *Troy A.*
9  *H. v. Commissioner of Soc. Sec.*, No. 6:20-cv-01228-YY, 2022 WL 336846, at *5 (D. Or. Feb. 4,
10 2022) ("[T]he ALJ selectively relied upon notes indicating 'no acute distress' while ignoring
11 plaintiff's subjective complaints of pain and gastrointestinal distress accompanied by objective
12 exam findings of abdominal tenderness within the same exam."); *Jonathan P.C. v. O'Malley*, No.
13 3:23-cv-00106-SLG, 2024 WL 913341, at *7 (D. Alaska. Mar. 4, 2024).
14         Here, the ALJ did not simply cherry-pick a few statements of "no acute distress."  Rather,
15 the ALJ cited the findings document in numerous reports of examination that Plaintiff appeared in
16 no acute distress (AR at 284, 313, 335, 339, 343, 349, 353. 359, 364, 369, 374, 379, 384, 390,
17 395, 401, 406, 411, 418, 423, 429, 472, 477, 481, 485, 490, 494, 499, 504, 510, 515, 520, 524,
18 529, 534, 540, 544, 549, 555, 559, 564, 574, 622, 639, 654, 659), and acknowledged, in those
19 same examinations, findings that Plaintiff also had pain with active range of motion, difficulty
20 lifting her arms over her head, complaints of pain, and tenderness to palpitation (*id*. at 20).  The
21 ALJ's recognition of over forty separate examinations where Plaintiff appeared in no acute
22 distress is inconsistent with Plaintiff's testimony that she was "in pain every single day."  *See* AR
23 at 41; *see generally id*. at 43, 47-48, 52, 212, 252; *cf. Kari J. v. O'Malley*, No. 3:23-cv-00128-
24 HRH, 2024 WL 1855108, at *7 (D. Alaska. Apr. 29, 2024) ("[D]espite 'normal' physical
25 presentations at appointments, the longitudinal record demonstrates that Plaintiff's IC symptoms
26 were chronic."); *Lester*, 81 F. 3d at 833 ("*[o]ccasional* symptom-free periods—and even the
27 *sporadic* ability to work—are not inconsistent with disability) (emphasis added).  Thus, the ALJ's
28 recognition Plaintiff was in no acute distress (AR at 20), was a specific, clear and convincing

reason to discount Plaintiff's symptom testimony.

Next, Plaintiff argues the ALJ erred in dismissing "the fact that more aggressive treatment was offered and either failed or was not certain to work." (Doc. 19 at 10). Plaintiff contends "[C]hoosing not to undergo a surgery that [] is unlikely to provide relief does not suggest that pain is less severe, the same way that failing to obtain pain relief from injections does not mean a claimant's pain is not real and severe." *Id*. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist," such as where "the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *see Carmickle*, 533 F.3d at 1162 ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

As discussed above, the ALJ noted "[t]he record reflected a suggestion for surgery on her back but she 'didn't want it.'" AR at 20. The record at issue indicates that Dr. Hany Nsar, MD. recommended surgery. *See id*. at 297, 346, 476. At the hearing, Plaintiff testified that "the surgery was a 50/50. Like if I had it, it could help, or it wouldn't help. So, I didn't want to do the surgery." *Id*. at 47.

The ALJ properly discounted the severity of Plaintiff's symptoms in light of her choice to forego more aggressive forms of treatment. Plaintiff's claim that the surgery was unlikely to provide relief is speculative and without merit. (Doc. 19 at 10). Plaintiff herself testified at the hearing that she was told it was "50/50" that surgery would help her, and yet she did not pursue surgery. AR at 47; *see Scott v. Berryhill*, No. 1:15-cv-1831-GSA, 2017 WL 1549941, at *7 (E.D. Cal. May 1, 2017) (where plaintiff has received physical therapy and epidural injections for back

pain but declined surgery, the ALJ's finding that treatment was "conservative" was supported by the record); *see also Centanni v. Berryhill*, 729 Fed. Appx. 560, 562 (9th Cir. 2018 ("the ALJ properly rejected Centanni's testimony based on his conservative and noninvasive treatment, including refusals of analgesics, a steroid injection, an ankle brace, and ankle surgery."). Therefore, the ALJ properly rejected Plaintiff's testimony based on her conservative treatment.

Plaintiff also argues the ALJ erred in discounting her symptom testimony because "medication 'increased her functional mobility.'" (Doc. 19 at 10). Plaintiff asserts "the ALJ failed to acknowledge that [her] reduced pain lasted for only two hours, and she is often simply waiting in pain for her next dose of pills." *Id*. Plaintiff claims this temporary pain relief that briefly allowed her to maintain some daily activities was not inconsistent with her testimony. *Id*. In the hearing, Plaintiff testified she takes pain medication three to four times a day. AR at 48. Plaintiff alleges the medication "takes at least about a half hour to even kick in" and lasts her two hours of relief. *Id*. Plaintiff stated she then waits and stays in pain until she can take the next pill. *Id*. at 48-49. Plaintiff claimed the pills only eased her pain and didn't eliminate her pain. *Id*. at 49.

The ALJ did not acknowledge the alleged "temporary nature" of Plaintiff's pain relief. *C.f. James K. v. Kijakazi*, No. CV 22-5137-DFM, 2023 U.S. Dist. LEXIS 106785, at *10-11 (C.D. Cal. Jun. 20, 2023) ("the ALJ did acknowledge in the decision that Plaintiff's pain relief was partial and required ongoing treatment to manage."). Instead, the ALJ noted, "[p]ain medication, such as Norco as needed and Lidoderm patches, helped control [Plaintiff's] pain, increased her functional mobility, and enabled her to maintain her activities of daily living independently." AR at 20. In support, the ALJ cited medical records that also document that Plaintiff's pain medication helps to control pain, increase functional mobility, and maintain her instrumental activities of daily living. *Id*. at 403, 414, 418, 623.

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citation omitted); *see Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim

1    of disability."). While both the ALJ and the record noted pain medication "helped" Plaintiff,
2    neither stated the pain medication allowed her impairment to be effectively controlled. *See* AR at
3    407, 414, 418, 623, 626 ("Functional status: improved since starting medicine…Pain medication
4    continues to help Cynthia to perform ADLs and increase functionality."). Accordingly, Plaintiff's
5    improvement with pain medication was not inconsistent with Plaintiff's testimony that the
6    improvement was only temporary, and therefore, did not constitute a specific, clear and
7    convincing reason to discount Plaintiff's symptom testimony.
8      Plaintiff alleges the ALJ erred in rejecting Plaintiff's testimony "because she was able to
9    use a phone, engaged in social activities, enjoyed reading and watching television, and did some
10   household chores and shopping." (Doc. 19 at 10). Plaintiff contends her activities were not
11   inconsistent with her claimed limitations or indicative of her ability to work. *Id*. at 10-11.
12   Specifically, Plaintiff notes she "spends most of the day lying down, she does not know how to
13   use apps on her phone, her participation in social activities is limited to sitting in a lawn chair at
14   the park with family, and she does household chores with help from her husband." *Id*. at 11.
15     An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's
16   subjective statements. *Burch*, 400 F.3d at 681. Daily activities "form the basis for an adverse
17   credibility determination" when: (1) the daily activities contradict the claimant's other testimony
18   or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d
19   625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). A claimant need not be "utterly
20   incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. As stated above, the ALJ noted
21   that despite Plaintiff's impairments, she has been able to perform a variety of activities. AR at
22   20. The ALJ asserted Plaintiff had no problems using the phone, engaging in social activities,
23   reading, watching television, going to the store, shopping, cleaning up around the house with
24   breaks, washing dishes, and driving a car. *Id*. at 20-21.
25     While the ALJ cited examples of Plaintiff's activities of daily living from the record (*id*.),
26   she undertook little to no analysis of these aforementioned activities. An ALJ must identify what
27   parts of Plaintiff's testimony are inconsistent with Plaintiff's activities of daily living and explain
28   where and how the inconsistency arises. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th

1  Cir. 2014); *see Yamada v. O'Malley*, No. 1:20-cv-001386-JLT-BAM, 2024 WL 3226798, at *7

2  (E.D. Cal. June 28, 2024) ("Courts in this district have found that the ALJ erred when the ALJ

3  failed to precisely identify how the daily activities conflicted with symptom testimony.") (citing

4  cases). The ALJ's failure to offer any discussion explaining how Plaintiff's testimony was

5  inconsistent with her daily activities falls short of the specific, clear and convincing standard.

6        Separately, the parties dispute whether Plaintiff's seasonal work undermines her symptom

7  testimony. Plaintiff previously had a part-time seasonal job at Xanterra Parks and Resorts in

8  Yellowstone National Park up until her alleged disability date. AR at 19, 36, 193. Plaintiff's

9  duties included supervising the housekeeping staff and later sorting laundry. *Id*. at 37-41.

10 Plaintiff testified she stopped working for Xanterra because of her back pain in 2016. *See id*. at

11 41 ("And I know if I was to go back there, I can't do the work anymore."). The ALJ asked

12 Plaintiff if she left at the end of the time period she was supposed to, or earlier. *Id*. In response,

13 Plaintiff testified:

14/15/16  > "Yes. No. I think it was—we only did two months or three months the last year that we were there. And, yeah, we just—I just did my time. And then when it was time, we left. And then I just didn't sign up for it anymore because I know, you know, the work that we had to do. And I just I can't do it anymore."

17 *Id*. The ALJ noted Plaintiff's work at Yellowstone National Park ended because of the season

18 change, not due to her alleged disability. *Id*. at 20. Plaintiff asserts she stopped working at

19 Yellowstone due to her impairments. (Doc. 19 at 11).

20       In evaluating pain, the ALJ may consider evidence that Plaintiff stopped working because

21 her job was seasonal, and not due to a physical impairment. *Ellis v. Berryhill*, No. 2:16-cv-1490-

22 EFB, 2017 4181094, at *4 (E.D. Cal. Sep. 19, 2017) (citing 20 C.F.R. § 416.929(c)(3) (in

23 evaluating pain the Commissioner will consider, among other things, prior work record)); *see*

24 *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (pain testimony properly discounted

25 because claimant stopped working for reasons unrelated to her pain). Here, the record

26 demonstrates Plaintiff stopped working at Yellowstone on August 15, 2016, when her seasonal

27 position ended. AR at 41. Plaintiff claims she stopped working because of her impairments.

28

(Doc. 19 at 11). However, Plaintiff's testimony reveals she had been working with alleged pain and accommodations. AR at 38, 41. There is no indication from Plaintiff's testimony that she had to prematurely leave Yellowstone due to her impairments. Therefore, the ALJ properly cited Plaintiff's work at Yellowstone as a specific, clear and convincing reason to discount her subjective symptom testimony.

In conclusion, the ALJ provided specific, clear and convincing reasons to discount Plaintiff's symptom statements were not reliable, and any reason that the ALJ provided that did not meet that standard amounts to harmless error. *Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record).

## IV.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ. *Tackett*, 180 F.3d at 1098. On the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence and proper analysis. For this and the reasons set forth above, IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 19) be DENIED;
2. The decision of the Commissioner of Social Security be AFFIRMED.
3. The Clerk of the Court be directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **July 17, 2024**

_____
UNITED STATES MAGISTRATE JUDGE